# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**REGINALD DUNAHUE**                                                                **PLAINTIFF**
**ADC #106911**

**V.**                          **NO. 2:23-cv-00016-BSM-ERE**

**WILLIAM F. STRAUGHN,** *et al.*                                              **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections:**

This Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Miller can adopt this Recommendation without independently reviewing the record.

**II.    Discussion:**

On January 23, 2023, Plaintiff Reginald Dunahue, an Arkansas Division of Correction ("ADC") inmate, filed a 15-page complaint with 100 pages of attachments. *Doc. 2*. Mr. Dunahue sued fourteen individuals.[1]

---

[1] Mr. Dunahue's original complaint alleged that: (1) Defendants Shipman, Culclager, and Jackson retaliated against him for his use of the grievance procedure by transferring him to the

Mr. Dunahue is proceeding on his claim that Defendants James Shipman, Maurice Culclager, and Moses Jackson transferred him to the East Arkansas Regional Unit ("EARU") in retaliation for Mr. Dunahue's use of the grievance procedure. *Docs. 9, 13*.

Pending before the Court is Defendants' motion for summary judgment, statement of facts, and supporting brief arguing that Mr. Dunahue failed to fully exhaust his administrative remedies before filing this lawsuit. *Docs. 33, 34, 35*. Mr. Dunahue has responded to Defendants' motion (*Doc. 44*), which is now ripe for review. For the reasons explained below, I recommend that the Court grant Defendants' motion for summary judgment (*Doc. 33*).

---

East Arkansas Regional Unit; (2) Defendants Shipman, Culclager, and Jackson violated his rights under the Equal Protection Clause; and (3) Defendants Payne, Straughn, White, Westbrook, Palmer, Swiney, Allison, Jackson, Richardson, and Johnson denied him the right to shower, shave, receive nutritiously adequate meals, exercise, outdoor recreation, use eating utensils and cups, clean clothing, adequate mattresses, heating, cleaning supplies, and receive haircuts.

    On February 3, 2023, the Court advised Mr. Dunahue that he may not pursue multiple factually and legally unrelated claims in a single lawsuit. *Doc. 5*. Rather than dismiss his complaint, the Court postponed the screening process to give Mr. Dunahue an opportunity to file an amended complaint choosing related claims to pursue in this case. The Order specifically advised Mr. Dunahue that if he failed to file an amended complaint narrowing his claims, "the Court may choose a claim for him to pursue in this case and dismiss the others." *Id. at 3*.

    On February 23, 2023, Mr. Dunahue filed an amended complaint including the same claims raised in his original complaint. *Doc. 8*. Because Mr. Dunahue refused to select a claim to proceed on in this case, the Court selected one for him and dismissed Mr. Dunahue's remaining claims for improper joinder. *Doc. 13*.

2


## III.  Discussion:

### A.  The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted before filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Dunahue to satisfy the ADC's requirements for raising and exhausting the claims he is asserting in this lawsuit *before* bringing this action.[2]

### B.  The ADC's Exhaustion Policy

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34.

---

[2] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

*Doc. 33-5*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 19*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising that claim with the Warden within three business days of the denial of the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 6-14*. The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejection of an appeal. *Id. at 13*.

Thus, to properly exhaust his administrative remedies with respect to his claims against Defendants, Mr. Dunahue was required to present each claim in a timely filed grievance and to complete all three steps of the ADC's grievance process before initiating this lawsuit. See *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original).

### C.   Mr. Dunahue's Grievance History:

In support of their motion, Defendants submit the declaration of ADC Inmate Grievance Supervisor Terri Grigsby-Brown. *Doc. 33-2*. Ms. Grigsby Brown's declaration states that Mr. Dunahue filed two grievances related to his October 2022 transfer to the East Arkansas Max Unit: (1) EAM-22-2238; and (2) EAM-22-2135. *Id. at 6*.

#### 1.   Grievance Number EAM-22-2238

On November 10, 2022, Mr. Dunahue submitted grievance EAM-22-2238 in which he alleges that: (1) Defendant Jackson admitted that the EARU[3] lacks adequate security; and (2) Defendant Culclager transferred him to EARU because Mr. Dunahue notified "news stations" about the use of illegal drugs by inmates in the Tucker Max Unit. *Doc. 33-3 at 7*. Mr. Dunahue did *not* allege that he was transferred to the EARU/EAMU in retaliation for his use of the inmate grievance procedure. Accordingly, grievance EAM-22-2238, although fully exhausted, is not relevant to Mr. Dunahue's pending retaliation claim.

#### 2.   Grievance Number EAM-22-2135

On October 26, 2022, Mr. Dunahue submitted EAM-22-2135 in which he complains that officials at the EARU do not provide inmates forks and spoons with

---

[3] In his grievance, Mr. Dunahue specifically references the EARU, although Mr. Dunahue was specifically transferred to the EAMU.

their meals. *Doc. 33-4 at 7*. Although Mr. Dunahue fully exhausted grievance EAM-22-2135, it is not relevant to his pending retaliation claim.

**D.     Mr. Dunahue's Response to Defendants' Motion:**

In his response to Defendants' motion, Mr. Dunahue states that the Deputy Director has not returned "20 of my 1st Amendment right violation grievances I sent him last year." *Doc. 44 at 1*. Although Mr. Dunahue claims that the Deputy Director failed to return over 20 grievance decisions to him, Mr. Dunahue fails to present copies of any unit level, or "Step One," grievance papers relating to his pending retaliation claim.[4] Nor does Mr. Dunahue present any other evidence to dispute Defendants' evidentiary showing that he failed to fully exhaust his administrative remedies regarding his First Amendment or retaliation claim.

On this record, no genuine issue of material fact exists on the threshold exhaustion question. Defendants are entitled to summary judgment on Mr. Dunahue's retaliation claim.

---

[4] In response to Defendants' motion, Mr. Dunahue references several grievance papers that he attached to his original complaint. *Doc. 44 at 3*. However, the grievance papers Mr. Dunahue references do not relate to his pending First Amendment claim. Rather, those grievances relate to: (1) an October 2022 PREA investigation (*Doc. 2 at 21-23*); (2) Defendant Jackson's failure to provide Mr. Dunahue adequate treatment and housing after he reported sexual abuse at the facility; and (3) Defendants' failure to provide inmates adequate shaving products, eating utensils, access to the shower, outdoor recreation, thermal underwear, and nail clippers. *Id. at 47-50*. These documents, although irrelevant to Mr. Dunahue's retaliation claim, suggest that Mr. Dunahue has a practice of holding on to unit level grievance papers, undercutting his allegation that grievance papers related to his retaliation claim were not returned to him.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 33*) be GRANTED.

2. Mr. Dunahue's First Amendment claim be DISMISSED, without prejudice, based on his failure to fully exhaust his administrative remedies.

3. The Clerk be instructed to close this case.

Dated 8 August 2023.

_____
UNITED STATES MAGISTRATE JUDGE